FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

98 JUL -2 PM 3: 14

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| In re: DOVE COAL CORPORATION, | )<br>) |
| Debtor. | ) 93-02457-TOM-7<br>) |
|  | )<br>) ENTERED<br>) JUL 02 1998 |
| WILLIAM D. CRAWFORD, | )<br>) |
| Defendant-Appellant, | )<br>) |
| vs. | )<br>) CV-97-PT-3125-S |
| MAX C. POPE, SR., Trustee of the Estate of<br>Dove Coal Corporation, | )<br>)<br>) |
| Plaintiff-Appellee. | ) |

## Memorandum Opinion

This cause comes as an appeal from a judgment of the United States Bankruptcy Court for the Northern District of Alabama avoiding various preferential transfers made to defendant-appellant William Crawford ("Crawford") by debtor Dove Coal Corporation ("Dove"). In his appeal, Crawford claims certain payments by Dove to him were not preferential transfers avoidable by the plaintiff-appellant, Max L. Pope, Sr., the Trustee of Dove's Estate ("Trustee"), (1) because the transfers in amounts totaling $125,000.00 made between ninety (90) days and one year from the filing of the bankruptcy action by Dove were not made "to or for the benefit of a creditor" who "at the time of such transfer was an insider" within the

meaning of § 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b), and (2) because $100,000.00 of the appellant's claim against Dove was a properly secured claim that the appellant would have received in any case under Chapter 7 of the Bankruptcy Code.

The standard of review for the Bankruptcy Court's conclusions of law in the instant action are de novo. The facts in the instant case were agreed to by joint stipulation of the parties. As such, there are no factual issues for the court to review.

### FACTS

On September 18, 1992, Appellant Crawford received a judgment in the Circuit Court of Tuscaloosa County, Alabama, in a case styled William D. Crawford v. Tuscaloosa Sand and Gravel, et al., Case No. CV-91-197, against defendants Tuscaloosa Sand & Gravel, Inc., Dove, Joel Franklin ("Franklin"), James Tuggle ("Tuggle") and Stephen Speir for $275,000.00 on a breach of contract claim. By stipulation, the parties agreed that two of the defendants in the State court proceeding, Franklin and Tuggle, were insiders of Dove at the time of all of the relevant transfers in this case and that, due to the joint and several liability of the defendants, all (except the debtor) could be considered creditors of the debtor at the time the debtor began its transfer of funds to Crawford. In satisfaction of the judgment, Dove made transfers by check to Crawford for or on account of an antecedent debt owed by Dove to Crawford before the transfers were made for the listed amounts on the following dates:

| (1) | September 29, 1992 | $50,000.00 |
| (2) | October 29, 1992 | $50,000.00 |
| (3) | November 30, 1992 | $25,000.00 |
| (4) | December 29, 1992 | $25,000.00 |
| (5) | January 29, 1993 | $25,000.00 |

Apparently, no payments were made by the co-defendants. Of these payments, only the last two resulted in transfers within ninety (90) days of the date that the bankruptcy petition was filed. The three previous transfers occurred between ninety (90) days and one year from the time that the bankruptcy petition was filed. At the time of all payments, the debtor was insolvent.

On March 31, 1993, at 10:58 a.m., the appellant recorded his Certificate of Judgment in the Probate Court of Tuscaloosa County, Alabama. Approximately six hours later, at 4:25 p.m., Dove commenced a voluntary petition under Chapter 11 of the Bankruptcy Code. On June 28, 1994, Dove's

Chapter 11 case was converted to a Chapter 7 case and Trustee was appointed.

Subsequent to the transfers by Dove to Crawford and subsequent to the date of Dove's bankruptcy, Franklin filed bankruptcy and received a discharge and Tuggle died insolvent. On May 17, 1993, the appellant filed an unsecured non-priority proof of claim for $100,000.00 in the instant case.

On June 1, 1994, a complaint for turnover of preference was filed by Trustee to avoid averredly preferential transfers made by Dove to Crawford up to a year prior to commencement of the bankruptcy. Crawford filed an amended secured proof of claim for $100,000.00 on October 12, 1994. On June 27, 1997, Trustee filed a motion to amend his complaint to include within its scope Crawford's recording of the Certificate of Judgment with the Probate Court of Talladega County, which the Bankruptcy Court granted on August 18, 1997. The Bankruptcy Court entered an order on October 14, 1997, avoiding all of the transfers made by Dove to Crawford and avoiding Crawford's recording of the Certificate of Judgment.

CONTENTIONS & ANALYSIS

The appellant raises two contentions in his appeal. First, he claims that $125,000.00 in transfers from Dove to him were not avoidable preferential transfers because they were not "to or for the benefit of" an insider creditor under § 547(b) of the Bankruptcy Code.[1] Second, appellant argues that $100,000.00 of the transfers are not avoidable by the Trustee because they are secured claims.

## I. Whether transfers of $125,000.00 were "to or for the benefit of" Franklin and Tuggle under § 547(b).

Section 547(b) of Title 11, the Bankruptcy Code, states:

(b) except as provided in subsection (c) of this section, the Trustee may avoid any transfer of an interest of the Debtor in property-
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the Debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made-
        (A) on or within the 90 days before the date of the filing of the petition; or
        (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

---

[1] Crawford admitted that $50,000.00 in transfers from Dove occurred within ninety days of the filing of the petition and are, therefore, avoidable.

3

> (5) that enables such creditor to receive more than such creditor would receive if-
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Under §547(b)(4), there are two sorts of transfers that can be deemed preferential. The first of these is a transfer made on account of an antecedent debt to the creditor or for his benefit within ninety days of the filing of the bankruptcy petition. Dove's last two payments, totaling $50,000.00, fell into this category. They were made to the appellant by Dove in order to satisfy a previously entered, but not recorded, judgment and were made within ninety days of the filing of the bankruptcy petition on March 31, 1993. The second type of transfer is one made on account of an antecedent debt between ninety days and one year prior to the filing of the bankruptcy petition. This kind of transfer involves not mere creditors, but insider creditors. The bankruptcy court determined the first three payments, totaling $125,000.00, to be of this type. For the bankruptcy court, it was irrelevant whether the person to whom the payments were made, in this case Crawford, was an insider creditor, so long as the payments benefitted the insider creditors of Dove, Tuggle and Franklin. A benefit accrued to Franklin and Tuggle, the bankruptcy court found, because Franklin and Tuggle's liability to Crawford was reduced "dollar-for-dollar" by Dove's payments to Crawford. Crawford disputes that the transfers were made for the benefit of Franklin and Tuggle under § 547(b), arguing, one, that the <u>Deprizio</u> doctrine, on which the Bankruptcy Court relied in coming to its conclusion, has been abandoned by Congress and, two, that the payments by Dove were not for the benefit Franklin and Tuggle under the <u>Deprizio</u> doctrine.

In <u>Levit v. Ingersoll Rand Financial Corp. (In re V. N. Deprizio Construction Co.)</u>, 874 F.2d 1186 (7th Cir. 1989), the Seventh Circuit Court of Appeals held that transfers made to outside creditors that benefitted insider creditors of the debtor were preferential and, therefore, avoidable. In coming to its conclusion, the Seventh Circuit Court stated:

> The textual argument . . . is simple. Section 547(b) defines which transfers are "avoidable". No one doubts that a transfer to Lender produces a "benefit" for Guarantor. After § 547 defines which transfers may be avoided, § 550(a) identifies who is responsible for payment: "the initial transferee of such transfer or the entity for whose benefit such transfer was made" (emphasis added). This gives the trustee the option to collect from Lender, Guarantor, or both, subject only to the proviso in § 550(c) that there can be but one satisfaction.
> More than language lies behind this approach. The trustee's power to avoid preferences (the "avoiding power") is essential to make the bankruptcy case a collective proceeding for the determination and payment of debts. Any individual creditor has a strong incentive to make off with the assets of a troubled firm, saving itself at potential damage to the value of the enterprise. Many a firm is worth more together than in pieces, and a spate of asset-grabbing by creditors could dissipate whatever firm-specific value the assets have. Like fishers in a common pool, creditors

4

logically disregard the fact that their self-protection may diminish aggregate value--for if Creditor A does not lay claim to the assets, Creditor B will, and A will suffer for inaction. All creditors gain from a rule of law that induces each to hold back. The trustee's avoiding powers serve this end in two ways: first, they eliminate the benefit of attaching assets out of the ordinary course in the last 90 days before the filing, so that the rush to dismember a firm is not profitable from a creditor's perspective; second, the avoiding powers assure each creditor that if it refrains from acting, the pickings of anyone less civil will be fetched back into the pool. See Thomas H. Jackson, Avoiding Powers in Bankruptcy, 36 STAN.L.REV. 725, 727-31, 756-68 (1984).

How long should this preference-recovery period be? If one outside creditor knows that the firm is in trouble, others will too. Each major lender monitors both the firm and fellow lenders. If it perceives that some other lender is being paid preferentially, a major lender can propel Firm into bankruptcy. Reasonably alert lenders can act with sufficient dispatch to ensure that the perceived preference is recoverable even when the preference period is short. Section 547(b) makes 90 days the rule, time enough (Congress concluded) for careful creditors to protect themselves (and when one does, small unsecured trade creditors get the benefits too).

Insiders pose special problems. Insiders will be the first to recognize that the firm is in a downward spiral. If insiders and outsiders had the same preference-recovery period, insiders who lent money to the firm could use their knowledge to advantage by paying their own loans preferentially, then putting off filing the petition in bankruptcy until the preference period had passed. Outside creditors, aware of this risk, would monitor more closely, or grab assets themselves (fearing that the reciprocity that is important to the pooling scheme has been destroyed), or precipitate bankruptcy at the smallest sign of trouble, hoping to "catch" inside preferences before it is too late. All of these devices could be costly. An alternative device is to make the preference-recovery period for insiders longer than that for outsiders. With a long period for insiders, even the prescient managers who first see the end coming are unlikely to be able to prefer themselves in distribution.

Loans from insiders to their firms are not the only, or even the most important, concern of outside creditors. Insiders frequently guarantee other loans. If the firm folds while these loans are outstanding, the insiders are personally liable. So insiders bent on serving their own interests (few managers hold outside lenders' interests of equal weight with their own!) could do so by inducing the firm to pay the guaranteed loans preferentially. If the preference-recovery period for such payments were identical to the one for outside debts, this would be an attractive device for insiders. While concealing the firm's true financial state, they would pay off (at least pay down) the debts they had guaranteed, while neglecting others. To the extent they could use private information to do this more than 90 days ahead of the filing in bankruptcy, they would make out like bandits. The guaranteed loans would be extinguished, and with them the guarantees. True, it is logically possible to recover from the insider the value of the released guarantee, even if the trustee could not reach the proceeds in the hands of the outside lender. But it is hard to determine the value of a released guarantee, and anyway insiders might think that they would be more successful resisting the claims of the trustee than the hounds of the outside creditors. So an extended recovery period for payments to outside creditors that benefit insiders could contribute to the ability of the bankruptcy process to deter last-minute grabs of assets. The outsiders who must kick into the pool when the trustee uses the avoiding powers retain their contractual entitlements; all the trustee's recovery does is ensure that those entitlements (as modified by any statutory priorities)--rather than the efforts of insiders to protect their own interests, or the cleverness of outsiders in beating the 90-day deadline-- determine the ultimate distribution of the debtor's net assets.

Id. at 1194-95. In an opinion issued on September 8, 1994, the Eleventh Circuit Court of Appeals adopted Seventh Circuit's holding. In Galloway v. First Alabama Bank (In re Wesley Industries, Inc.), 30 F.3d 1438,

1441 (11th Cir. 1994), the court stated that it was "persuaded by [the Seventh circuit's] reasoning and likewise hold that the preference-recovery period is one year when the transfer produces a benefit for an inside creditor who is a guarantor."

The appellant contends that subsequent to the Eleventh Circuit Court's opinion in Galloway, Congress amended the Bankruptcy Code to eliminate the Deprizio doctrine. Trustee responds that the section was amended after Dove filed its bankruptcy petition and therefore, the amendment does not apply.

On October 22, 1994, Congress enacted the Bankruptcy Reform Act of 1994, Pub. L. 103-394, § 202 of which reformed § 547 of the Bankruptcy Code:

> SEC. 202. LIMITATION ON LIABILITY OF NON-INSIDER TRANSFEREE FOR AVOIDED TRANSFER.
> Section 550 of title 11, United States Code, is amended--
> (1) by redesignating subsections (c), (d), and (e) as subsections (d), (e), and (f), respectively, and
> (2) by inserting after subsection (b) the following:
> "(c) If a transfer made between 90 days and one year before the filing of the petition--
> "(1) is avoided under section 547(b) of this title; and
> "(2) was made for the benefit of a creditor that at the time of such transfer was an insider;
> the trustee may not recover under subsection (a) from a transferee that is not an insider.".

The purpose of this amendment, as stated in the bills explanatory notes, was to "overrule[] the Deprizio line of cases and clarif[y] that non-insider transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the 90-day statutory period." 140 Cong. Rec. H10752-01, H10767 (October 4, 1994).

While § 202 of the Bankruptcy Reform Act was meant to halt Deprizio's forward march in cases similar to the present case—i.e., in cases in which trustees were seeking to avoid transfers made to outside creditors on the basis that insider-creditors would accrue monetary benefit—Congress indicated that § 202 of the Act was not to apply retroactively. Pub. L. 103-394, § 702 ("Except as provided in subsection (b), this Act shall take effect on the date of the enactment of this Act.").

The appellant contends that were this court to consider application of the Deprizio doctrine, it would ignore Congress's clearly stated intent not to permit avoidance of transfers to creditors outside of the ninety day period. Although the Congress that enacted the Bankruptcy Reform Act of 1994 may have had this intent, there is no grounds on which to read this intent back onto the Congress that enacted the prior § 547(b). Besides, the Eleventh Circuit had held Deprizio to be the law of the circuit in pre-Reform Act

cases, and this court cannot depart from that holding on the basis of Congressional intent attached to a later-enacted law. Therefore, the court concludes that the Deprizio doctrine, if applicable, applies to the instant case.

The appellant next argues that the Deprizio doctrine is inapplicable to the instant case because it is only applicable where insider guarantors of a debtor's loan benefit from payments made by the debtor to the loan creditor. While this was the context of both Deprizio and Galloway, the court finds it hard to distinguish the circumstance of the guarantors in those cases with that of Dove's co-defendants in the instant case. The argument that the insider-creditors benefit from Dove's payments to the appellant is as strong as it would be were the insiders guarantors on a loan of the debtor not reduced to judgment. As with guarantors of a loan, Tuggle and Franklin, being jointly and severally liable for the judgment, could have been held to task for the full amount owed on the judgment against them.

The appellant argues that, ultimately, after a contribution action (had bankruptcy not interceded), Franklin and Tuggle would each be indebted to him only $35,000.00 and therefore only $70,000.00 of the money paid to appellant by Dove benefitted insider-creditors. The appellant contends that the other $105,000.00 paid by Dove accrued either to Dove's benefit or to that of other non-insiders. The benefit to the guarantor is indirect, but it is present.

The benefits to the insiders are more obvious in this case. First, the payments by Dove directly benefit its co-defendants, Franklin and Tuggle, by reducing the amount of their actual share of the liability to the appellant. In addition, the appellant could have chosen to collect the full amount of its judgment against either Franklin or Tuggle. However, unlike the guarantor, <u>either co-defendant could only bring a contribution action to collect a share of the total liability owed by Dove, not the entire amount</u>. The indirect benefit to the insider-creditors from Dove's payments to the appellant are even greater in this case than they would be in the case of a equivalent payment for the benefit of an insider-guarantor. The determination by the bankruptcy court that the Deprizio doctrine was applicable to the present case was not in error.[2]

---

[2] The appellant also contends that because a contribution action cannot be brought under Alabama law until one party has paid the entire judgment, Dove's payments could not have benefitted its co-defendants. This is incorrect. The benefit is not gauged by whether or how much a debtor could collect in a subsequent action. If this were the case, no benefit would accrue to guarantors under Deprizio because the debtor is incapable of collecting a judgment against the guarantor for money the debtor has paid to a creditor. The issue is, instead, whether the payments made by the debtor reduce the liability of the insider.

## II. Whether $100,000.00 in claims were secured claims.

The appellant states that $100,000.00 in claims were secured claims and that, therefore, $100,000.00 of the payments by Dove to him were not avoidable under § 574(b) of the Bankruptcy Code. The issue here is a narrow one. Both parties apparently agree that the filing of the Certificate of Judgment within the ninety day period was a preferential transfer under § 547(a). However, the appellant complains that the Trustee amended his complaint to set aside the filing of the Certificate outside of the two year limitations period stated in § 546(a), which requires that an action to avoid preference to be initiated no later than ". . . 2 years after the entry of the order for relief. . . ." 11 U.S.C. § 546(a). The Trustee admits that the amendment occurred outside of the two year period, but that the amendment was appropriate and that it related back to the time of the initial filing. The appellant contends that the amendment was neither appropriate, nor did it relate back.

Bankruptcy Rule 7015, which governs amendments to bankruptcy proceedings, states that "Rule 15 [of the Federal Rules of Civil Procedure] applies in adversary proceedings", such as the instant case. Under Rule 15, an amendment not accomplished within the initial stages of filing set out in the Rule can only be made with the agreement of the opposing party or with leave of court. The appellant contends that the court improperly allowed the amendment. The bankruptcy court's "decision on whether to grant a motion for leave to amend the pleadings is reviewed for abuse of discretion." Hargett v. Valley Federal Savings Bank, 60 F.3d 754, 760 (11th Cir. 1995). The court does not find that the amendment was an abuse of discretion.

The claim sought to be asserted by the Trustee in the amended complaint will relate back to the date of filing if "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . ." Fed. R. Civ. P. 15(c)(2). The filing of the Certificate of Judgment arises out of the same conduct and affairs as the other preferential transfers made to appellant by Dove, i.e., the judgment rendered against debtor in the state court action.

CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court will be **AFFIRMED**.

This 2nd day of July, 1998.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE